GEORGE A. ACERO (SBN: 226709)
ACERO LAW
331 J Street #200
Sacramento, CA  95814
Telephone: (916) 382-9215
E-mail: gacerolaw@outlook.com

Attorneys for Plaintiff Chinonye Ugorji

IN THE UNITED STATES DISTRICT COURT FOR

THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Chinonye Ugorji, ) | CASE NO. _____ |
| ) | |
| Plaintiff, ) | **CVIVL COMPLAINT FOR DAMAGES** |
| ) | |
| vs. ) | |
| ) | |
| County of Lake, Trang Jensen, Nicholas Rotow, ) | |
| and Does 1 through 20, inclusive, ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |
| ) | |

Plaintiff, Chinonye ("Nonye") Ugorji, alleges as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343. Federal question jurisdiction arises pursuant to: 42 U.S.C. §1983; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2 ("Title VII"); and The Fair Labor Standards Act of 1938, 29 U.S.C. §201 et seq. ("FLSA").

2.      Supplemental jurisdiction over Plaintiff's state law claims is appropriate pursuant to 28 U.S.C. §1367.

3.      Venue is proper in the Northern District of California because the events and conduct complained of herein all occurred in Lake County, California, which is within the

-1-
Civil Complaint for Damages

jurisdiction of the United States District Court for the Northern District of California.

## THE PARTIES

4.     Plaintiff, Chinonye Ugorji, is a resident of the County of Sacramento, in the State of California.  During the entire period relevant to this lawsuit, Plaintiff worked for Defendants in Lake County, California.

5.     Defendant County of Lake is a County in the State of California, a public entity, headquartered in Lakeport, California, and oversees the County of Lake in the State of California. Plaintiff was employed by Defendant as a prosecutor in the Lake County District Attorney's office.

6.     Defendant Trang Thien Jensen was an employee of Lake County working in Lakeport, California, as a Senior Deputy District Attorney, during the relevant time period and Plaintiff is informed and believes she remains employed with the Defendant County and is a resident of Lake County. Defendant Jensen oversaw Plaintiff both in Court and out of Court, would review her written submissions, had the ability to reprimand Plaintiff. Plaintiff also believes Defendant Jensen recommended or encouraged the termination of her employment to the ultimate decision makers. Defendant Jensen was acting under the color and authority of the laws of the United States and the State of California during the time period relevant to this lawsuit and when she committed the tortious conduct. Plaintiff sues Defendant Jensen both in her individual and official capacities.

7.     Defendant Nicholas Dimitri Rotow was an employee of Lake County working in Lakeport, California, as a Deputy District Attorney, during the relevant time period and Plaintiff is informed and believes he remains employed with the Defendant County and is a resident of Mendocino County. Plaintiff is informed and believes that Defendant Rotow made defamatory statements about her. Defendant Rotow was acting under the color and authority of the laws of the United States and the State of California during the time period relevant to this lawsuit and during the time he committed the tortious conduct.  Plaintiff sues Defendant Rotow both in his individual and official capacities.

8.     Plaintiff is informed and believes, and thereon alleges, that each of the Defendants

(including the Doe Defendants) were, at all times herein mentioned, the agent, employee, partner and/or representative of one or more of the remaining Defendants and was acting within the course and scope of such relationship. Plaintiff is further informed and believes that each of the Defendants herein gave consent to, ratified and authorized the acts alleged herein to each of the remaining Defendants.

9.      The true names and capacities of Defendants named herein as Does 1 through 20, inclusive, whether individual, corporate, associate or otherwise are unknown to Plaintiff, who therefore sues said Defendants by fictitious names pursuant to the Federal Rules of Civil Procedure 15 and, since Plaintiff asserts State claims, California Code of Civil Procedure section 474.  Plaintiff will amend this Complaint to show such true names and capacities of these Does, when such names and capacities have been determined. Should Plaintiff learn facts to suggest the County is liable under *Monell v. Dep't of Soc. Servs*. (1978) 436 U.S. 658, she may add the County to her 42 U.S.C. section 1983 claim.

### FACTUAL ALLEGATIONS

10.      Plaintiff was hired by Lake County's District Attorney's office on April 30, 2018 as a Misdemeanor Prosecutor. She initially worked under District Attorney Don Anderson, whose term as District Attorney expired at the beginning of 2019.

11.      From the start, Ms. Ugorji's direct supervisor, Trang Jensen, was rude and condescending. She provided little training. Defendant Nicolas Rotow was given training in criminal charging, but Plaintiff was not given that same training, even after she requested to receive that training. When Plaintiff had questions, Defendant Jensen would get irritated and often stated to her "you can research it." She also ridiculed Plaintiff in front of others. Plaintiff was also aware that another attorney in the office, Nicholas Rotow, was also making defamatory statements about her to co-workers, defense attorneys, and even to a member of the local judiciary. Defendant Trang made no effort to stop Defendant Rotow from making such defamatory statements.

12.      District Attorney Anderson told Plaintiff that she was doing well in her position and that he would write her a favorable review as the outgoing District Attorney. However,

before he left, he told Ms. Ugorji that he learned from the gossip that her direct supervisor, Defendant Jensen, and the incoming District Attorney, Susan Krones, were planning to let her go after Krones took office and prior to Plaintiff completing probation.

13.     Despite the mistreatment and probationary release, Plaintiff was never written up and never received a negative written evaluation. She was not given a fair chance to obtain a position in the District Attorney's office compared to similarly situated attorneys outside her protected class. Then, she was replaced by a Caucasian male.

14.     In addition, Plaintiff was not provided her last paycheck or vacation cash out on her termination date as required. She contacted the Office Administrator a few days after her employment was terminated and was told her last check would be deposited on May 1st as per normal payroll practice. She was also told that her vacation pay would be provided in mid-May.

15.     Various witnesses will testify on Ms. Ugorji's favor as they acknowledge she performed well and, obviously, well enough to pass probation.

16.     Don A. Anderson, the District Attorney when Ms. Ugorji started at Lake County, wrote as follows:

"I am the District Attorney for the County of Lake, California. On April 30, 2018 I hired Chinonye Ugorji as a Deputy District Attorney. Over the past eight months I have watched Mrs. Ugorji progress in her work handling a variety of misdemeanor cases through the inception of receiving the reports to the completion of jury trials.

My observation has always been that she has handled herself very professionally both within the office and in court. Mrs. Ugorji has the respect of fellow attorneys, court staff, law enforcement, defense bar and the judges.

Mrs. Ugorji has always been willing to take on assignments without question and has shown a very positive demeanor. She has shown the ability to analyze cases and come up with satisfactory dispositions.

I would recommend her for the same or similar position without hesitation."

17.     Edward Philip Savin, a defense attorney for Lake County Indigent Defense wrote:

"It was soon clear to me that Nonye is a quality person who stood head and shoulders

-4-
Civil Complaint for Damages

above her colleagues in many ways. She is obviously very intelligent, always prepared, and punctual. In a community where the local dry cleaners closed their doors for lack of business, Nonye was always professionally attired and in that sense struck me as a fish out of water.

In Lake County, politics and long-standing relationships seem to be valued more than competence and diligence. I am not privy to what circumstances led Nonye to leave the District Attorney's office; I can only say that I found her to be a lovely person who was always accessible, always willing to talk about a case, and found a way to be good natured in an environment so bleak that it leaves little to make a person smile.*"*

18. Scott Emerick, a Public Defender, wrote:

*"*Ms. Ugorji was professional and courteous. She always had a smile and was willing to talk about the case, probably more than she wanted to. She was also firm in her resolve. And while there were many times I didn't appreciate that trait, it was her job, her responsibility and she fulfilled that role.*"*

19. Angela Carter, wrote:

*"*As promised, here are my impressions of your performance at the District Attorney's Office over the course of the last year. I always found you to be knowledgeable about the various cases we had together. In fact, I was always impressed that you knew the facts off the top of your head without consulting a file. In light of the huge caseload you had, I thought that was amazing. I was found you to be knowledgeable about the law and to be steadfast in your opinions on what should happen to my clients. I was always impressed with you in court, you spoke politely to the judge and the attorneys. I think you're a very nice person and I wish you all the best with the future. I will be sorry not to see you in Lake County anymore.*"*

20. Grey Cohen, who worked with Ms. Ugorji stated, among other things:

*"*I began working on March 25, 2019. When I was offered the position I was advised that I would be coming in as an addition to the staff already present in the office. I was not informed that I would be replacing a current employee who they were planning on terminating. My first day was spent in new employee orientation and after that I was assigned to the misdemeanor calendar. I immediately sensed that the office was divided, it felt like a very hostile work

Civil Complaint for Damages

environment. I was working with Mr. Rotow, who freely indicated to me that you would not be with the office much longer and that I should not try and learn anything from you because it would likely be wrong. I spent the next few weeks in court with the two of you. Based on my observations your performance was better than competent, however Mr. Rotow kept derogating you to me. On 4/15/19, I needed to advise the court that you were in another department. I asked him how to pronounce your last name and he informed me that there was some discussion on that previously however it wouldn't make any difference in the future and that I needn't be concerned with it. Based on his previous comments I assumed that meant that your employment with the county would be coming to an end. On April 15 we were in court on the misdemeanor calendar and he came out of the judges chambers after some discussion with the judge. I asked him what took so long, as I was curious about the caseload, he advised me that he was discussing Matters concerning you and your caseload with the judge and he indicated to the judge that she would not have to put up with you for much longer. While he did not give me specifics about the details of the conversation the inference I drew was that he was disparaging you in Chambers to the Judge. Later that same day I had a meeting with the district attorney and I advised her of the aforementioned and she was dismissive, suggesting that since I didn't really know what was discussed, the conclusion that I arrived at was only an opinion. I suggested to her that my opinion was based on information I have been receiving from him since the beginning of my employment with respect to comments he had made about you. I also suggested to her that terminating your employment, being that you were the only person of color in the office, could bring about adverse consequences in the form of a lawsuit. She was also dismissive about that suggestion and indicated to me that Trang was also a person of color and that letting you go was a decision that was in the best interests of the office.

The following Tuesday after you were let go I was in court covering the calendar and two of the defense attorneys, Edward Savin and Scott Emerick, both indicated to me that Mr. Rotow had been making negative comments about you for weeks and in their opinion he helped to engineer your termination.*"*

21.    Plaintiff timely filed a complaint with the Department of Fair Employment and

Civil Complaint for Damages

Housing on October 1, 2019 and has received an immediate right to sue notice on that date. Plaintiff also filed a government claim and received a notice dated November 12, 2019 stating the claim was rejected by operation of law effective August 29, 2019. Plaintiff has appropriately exhausted all required administrative remedies to file this action.

## FIRST CAUSE OF ACTION

### (Civil Rights Violations - 42 U.S.C. § 1983 against Jensen)

22.    Plaintiff hereby incorporates by reference Paragraphs 1 through 21 of this Complaint as if fully set forth herein and further alleges for this cause of action as follows:

23.    42 U.S.C. § 1983 allows defendants to be found liable when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia."

24.    Defendant Jensen terminated, or was a sufficient legal cause in moving the final decision maker to terminate Plaintiff's employment because of her race and ethnicity in violation of the Equal Protection Clause of the United States Constitution as made applicable to the States.

25.    Defendant Jensen was acting under the color of law within the meaning of 42 U.S.C. § 1983. She is being sued in her individual capacity and liable for damages in that capacity.  Defendant Jensen is being sued in her official capacity for purposes of obtaining injunctive relief.  (*Ex parte Young* (1908) 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714.)

## SECOND CAUSE OF ACTION

### (Discrimination in Violation of Cal. Gov't Code § 12940(a); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2 against the County)

26.    Plaintiff hereby incorporates by reference Paragraphs 1 through 25 of this Complaint as if fully set forth herein and further alleges for this cause of action as follows:

27.    At all times herein mentioned, California's Fair Employment and Housing Act ("FEHA"), Cal. Government Code § 12940 et seq., was in full force and effect and fully binding upon Defendants.  Plaintiff's race and ethnicity qualify as protected classes under the FEHA.

28.    Plaintiff suffered an adverse action because Plaintiff's employment was

terminated, and Plaintiff's protected class was at least a substantial motivating reason for the adverse action, so it constitutes discrimination in violation of Government Code § 12940(a).

29.    As a direct, foreseeable and proximate result of Defendants' unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings, and other employment benefits and has also incurred other economic losses.

30.    As a further direct, foreseeable and proximate result of Defendants' unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, and embarrassment all to the Plaintiff's damage in an amount to be proven at time of trial.

31.    Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and malicious motive amounting to malice and oppression, and in conscious disregard of the rights or safety of Plaintiff and others.  Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

**THIRD CAUSE OF ACTION**

**(Failure to Take All Reasonable Steps to Prevent**

**Harassment/Discrimination/Retaliation in Violation of Cal. Gov't Code §12940(k) against**

**the County)**

32.    Plaintiff hereby incorporates by reference Paragraphs 1 through 31 of this Complaint as if fully set forth herein and further alleges for this cause of action as follows:

33.    At all times herein mentioned, California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §12900, et seq., was in full force and effect and was fully binding upon Defendant.  Specifically, §12940(k) makes it an unlawful employment practice for an employer to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.

34.    Defendant County failed to adequately supervise, train, and investigate the behavior of its employees, including Defendants Jensen and Rotow, failed to take all reasonable steps to prevent discrimination from occurring.  Defendants' failed to take all reasonable steps necessary to prevent discrimination from occurring in violation of §12940(k).

35.     As a direct, foreseeable and proximate result of Defendants' unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings, and other employment benefits and has also incurred other economic losses.

36.     As a further direct, foreseeable and proximate result of Defendants' unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, and embarrassment all to the Plaintiff's damage in an amount to be proven at time of trial.

37.     Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and malicious motive amounting to malice and oppression, and in conscious disregard of the rights or safety of Plaintiff and others.  Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

## FOURTH CAUSE OF ACTION

### (Defamation against the County and Rotow)

38.     Plaintiff hereby incorporates by reference Paragraphs 1 through 37 of this Complaint as if fully set forth herein and further alleges for this cause of action as follows:

39.     Defendants caused to be published false and unprivileged communications tending directly to injure Plaintiff in her business and professional reputation.  More specifically, Defendants made untrue statements alleging she was incompetent in job as an attorney. Statements to this effect were directly heard by co-worker Grey Cohen who relayed the information to Plaintiff. Plaintiff is informed and believes that Public Defenders Edward Philip Savin and Scott Emerick, as well as a member of the local judiciary, also heard statements to this effect. Defendants' defamatory statements were designed and intended to diminish Plaintiff's reputation and injure Plaintiff in her good name and employment. These statements were made with malice and ill will towards Plaintiff and not in a privileged setting.

40.     As a proximate result of the defamatory statements made by Defendant as aforesaid, Plaintiff has suffered injury to her business and professional reputation, and further has suffered and continues to suffer embarrassment, humiliation, and anguish, all to Plaintiff's damage in an amount according to proof.

Civil Complaint for Damages

41.    Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and malicious motive amounting to malice and oppression, and in conscious disregard of the rights or safety of Plaintiff and others.  Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

**FIFTH CAUSE OF ACTION**

**(Failure to Pay Overtime in Violation of Labor Code §§ 204, 510, 1194, the applicable IWC Wage Orders, and the FLSA 29 U.S.C. §207 against the County)**

42.    Plaintiff hereby incorporates by reference Paragraphs 1 through 41 of this Complaint as if fully set forth herein and further alleges for this cause of action as follows:

43.    Defendants were required to compensate Plaintiff at one and one-half (1½) times the regular rate of pay for hours worked in excess of eight (8) hours per day and/or forty (40) hours per week, and two (2) times the regular rate of pay for hours worked in excess of twelve (12) hours per day.  See Labor Code §§ 510, 1194.

44.    Plaintiff was paid hourly at a rate of $27.89.  However, she was only paid for a maximum of 40 hours, even though she regularly worked over 40 hours.  Indeed, when she was hired, she was told by Chief Deputy Richard Hinchcliff that she was expected to put in the time necessary to get the work done, including working on weekends.  Defendant Jensen told Plaintiff this was "not an 8 to 5 job." Further, Plaintiff's supervisor, Defendant Jensen, and others at the County were aware, or should have been aware, Plaintiff was working overtime. While Plaintiff was an attorney, she did not qualify for the professional exemption because she was not paid a fixed salary, she was paid based on the hours she worked. Defendant County failed to compensate Plaintiff for the overtime as required by law.

45.    Overtime is also required under the FLSA, 29 U.S.C. §207(a)(1), "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a

rate not less than one and one-half times the regular rate at which he is employed."

46.    Defendants' conduct violated Labor Code sections 510 and 1194, and the applicable Wage Orders.  As a proximate result of Defendants' conduct, Plaintiff has been damaged and deprived of overtime wages.  Plaintiffs now seek these wages, attorney's fees and costs, and interest pursuant to Cal. Labor Code section 1194.

47.    Since Defendant's actions also violated the FLSA, 29 U.S.C. §207, such violations result in liquidated damages of "an additional equal amount" of the unlawfully denied wages and "a reasonable attorney's fee to be paid by the defendant, and costs of the action." (See 29 U.S.C. §216(b).)

## SIXTH CAUSE OF ACTION

**(Failure to Pay Minimum Wage in Violation of Labor Code §§ 1194, 1197, 1197.1, the applicable IWC Wage Orders, and the FLSA 29 U.S.C. §206 against the County)**

48.    Plaintiff hereby incorporates by reference Paragraphs 1 through 47 of this Complaint as if fully set forth herein and further alleges for this cause of action as follows:

49.    Defendants were required to compensate Plaintiff at the State's minimum wage per hour for all time worked.  See, e.g., MW Order; Labor Code §1194. The FLSA, 29 U.S.C. §206, also requires payment of at least a minimum wage.

50.    Plaintiff was paid hourly at a rate of $27.89.  However, she was only paid for a maximum of 40 hours, even though she regularly worked over 40 hours. Indeed, when she was hired, she was told by Chief Deputy Richard Hinchcliff that she was expected to put in the time necessary to get the work done, including working on weekends.  Defendant Jensen told Plaintiff this was "not an 8 to 5 job." Further, her supervisor, Defendant Jensen, and others at the County were aware, or should have been aware, she was working overtime. While Plaintiff was an attorney, she did not qualify for the professional exemption because she was not paid a fixed salary, she was paid based on the hours she worked. Defendant County failed to compensate Plaintiff for every hour she worked.

51.    Plaintiff is due money for all unpaid work time for at least the applicable minimum wage. Moreover, under Labor Code section 1194.2(a), an employer is required to pay

"liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon." Plaintiff is also due these liquidated damages, as well as attorney's fees and costs, and interest pursuant to Cal. Labor Code section 1194.

52.     Since Defendant's actions also violated the FLSA, 29 U.S.C. §206, such violations result in liquidated damages of "an additional equal amount" of the unlawfully denied wages and "a reasonable attorney's fee to be paid by the defendant, and costs of the action." (See 29 U.S.C. §216(b).)

## SEVENTH CAUSE OF ACTION

### (Failure to Reimburse Business Expenses in Violation of Labor Code § 2802 against the County)

53.     Plaintiff hereby incorporates by reference Paragraphs 1 through 52 of this Complaint as if fully set forth herein and further alleges for this cause of action as follows:

54.     Labor Code §2802(a) provides that "(a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."

55.     Defendants failed to reimburse work related expenses incurred by Plaintiff in violation of Labor Code §2802. Specifically, the County failed to reimburse employees who used their personal cell phones for work purposes. The California Court of Appeal has held that reimbursement is required: "To show liability under section 2802, an employee need only show that he or she was required to use a personal cell phone to make work related calls, and he or she was not reimbursed." (*Cochran v. Schwan's Home Service, Inc*. (2014) 228 Cal.App.4th 1137, 1145.)

56.     Plaintiff used her cell phone to contact police officers, supervisors, and witnesses both via phone calls and text messages. Many times, especially witnesses, had to sometimes be contacted outside normal business hours so she had no choice but to use her cell phone. Thus, the expenses were reasonable and necessary and reimbursable under the Labor Code. Further,

-12-
Civil Complaint for Damages

Plaintiff's supervisors were aware she was using her cellular for work purposes.

57.     Defendant must reimburse Plaintiff for all reasonable work-related expenses incurred, as well as pay for reasonable attorney's fees and costs pursuant to Labor Code §2802.

## EIGTH CAUSE OF ACTION

### (Failure to Pay All Compensation Due at the Time of Termination / Waiting Time Penalties in Violation of Labor Code §§ 201-203 against the County)

58.     Plaintiff hereby incorporates by reference Paragraphs 1 through 57 of this Complaint as if fully set forth herein and further alleges for this cause of action as follows:

59.     Labor Code §201 provides: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

60.     Plaintiff was not paid all wages due at the time of the termination of her employment. Her employment was terminated on April 19, 2019, but she did not get her final paycheck until May 1, 2019. She was not paid accrued, but unused, vacation until May 23, 2019. Thus, she is owed full waiting time penalties. The failure to pay these wages due was in complete disregard of Defendant's legal obligations and a willful violation of the law.

61.     Labor Code §203 authorizes "waiting time penalties" where employees are not paid wages as required by law at the conclusion of the employment relationship: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

62.     Plaintiff is owed the daily wage multiplied by 30 because all wages due were not paid within 30 days of when Plaintiff's employment was terminated, plus costs and reasonable attorney's fees in enforcing this provision.

## NITNH CAUSE OF ACTION

### (Failure to Timely Provide Personnel Records in Violation of Labor Code §1198.5 against the County)

-13-
Civil Complaint for Damages

63. Plaintiff hereby incorporates by reference Paragraphs 1 through 62 of this Complaint as if fully set forth herein and further alleges for this cause of action as follows:

64. Labor Code section 1198.5 provides in pertinent part:

"(b) (1) The employer shall make the contents of those personnel records available for inspection to the current or former employee, or his or her representative, at reasonable intervals and at reasonable times, but not later than 30 calendar days from the date the employer receives a written request, unless the current or former employee, or his or her representative, and the employer agree in writing to a date beyond 30 calendar days to inspect the records, and the agreed-upon date does not exceed 35 calendar days from the employer's receipt of the written request."

65. Plaintiff requested Plaintiff's personnel file and payroll records via a letter (sent via certified mail).  She timely received some records, but she never received all documents required to be produced, including her job evaluation from District Attorney Anderson which she was told existed. This document is a "personnel record" within the meaning of Labor Code section 1198.5 so it should have been produced.  Given the failure to produce all the records in a timely manner, Defendants owe Plaintiff the $750 penalty under Labor Code section 1198.5(k), as well as costs and fees related to the enforcement of these provisions.

66. Plaintiff also seeks an injunction ordering defendant to produce all these documents.

## **PRAYER FOR RELIEF**

Plaintiff prays for judgment against Defendants and the following relief:

1. For compensatory damages, including but not limited to, lost back pay, plus interest, lost fringe benefits, reinstatement or future lost earnings and fringe benefits, other economic loss, damages for emotional distress and pain and suffering, according to proof allowed by law;

2. For punitive damages allowed by law;

3. For restitution and/or disgorgement;

4. For an award to Plaintiff of costs of suit incurred herein and reasonable attorneys'

-14-

Civil Complaint for Damages

fees as provided by any applicable statute or contract;

5.      For an award of prejudgment and post-judgment interest; and

6.      For statutory penalties as provided under the Labor Code and the FLSA; and

7.      For an award to Plaintiff of such other and further legal and equitable relief as the Court deems just and proper

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial.

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated:  February 26, 2020                              ACERO LAW

By:  _____
      GEORGE A. ACERO
Attorneys for Plaintiff Chinonye Ugorji

-15-
Civil Complaint for Damages