1

2

3          **UNITED STATES DISTRICT COURT**

4          **NORTHERN DISTRICT OF CALIFORNIA**

5

6     **CHINONYE UGORJI,**                      CASE NO.  4:20-cv-01448-YGR

7              Plaintiff**,**
                                                **ORDER GRANTING IN PART AND DENYING**
8          vs.                                  **IN PART DEFENDANTS' MOTION TO STRIKE**
                                                **AND DENYING MOTION TO DISMISS**
9     **COUNTY OF LAKE,**
                                                Re: Dkt. Nos. 16, 18
10             Defendant**.**

11

12          Plaintiff Chinonye Ugorju, an attorney formerly employed by the County of Lake, brings

13    this action against her former employer, County of Lake (the "County"), and former co-workers,

14    Trang Jensen, Nicholas Rotow, and Does 1 through 20.  In the complaint, plaintiff alleges that

15    defendants violated her civil rights under California and federal law; the County and Rotow

16    defamed her; and the County failed to pay minimum wage, reimburse work expenses, or provide

17    personnel records upon termination.  Defendants move to dismiss plaintiff's claims under Federal

18    Rule of Civil Procedure 12(b)(6) and further move to strike the defamation claim pursuant to

19    California Code of Civil Procedure section 425.16, which codifies California's law curtailing

20    "strategic lawsuits against public participation" (the "anti-SLAPP statute").

21          Having considered the papers and pleadings in this action, the Court finds the motion

22    appropriate for resolution without oral argument and the matter is deemed submitted.  Fed. R. Civ.

23    P. 78(b); Civ. L. R. 7-1(b).  The Court **GRANTS IN PART** and **DENIES IN PART** defendants' motion

24    to strike and **DENIES** the motion to dismiss.

25          **I.      BACKGROUND**

26          The following facts are alleged in the complaint.

27          Plaintiff worked at the County's District Attorney's office as a misdemeanor prosecutor

28    beginning in April 2018.  (Dkt. No. 15 ("FAC.").) ¶ 10.)  Plaintiff initially worked under District

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

Attorney Don Anderson, who spoke positively of plaintiff's professionalism and performance. (*Id.* ¶¶ 10, 12.) Eight months into her tenure, Susan Krones became the District Attorney. (*Id.* ¶ 12.) Prior to stepping down, Anderson warned plaintiff that Krones was planning to fire her based on her supervisor's recommendation before the end of her probationary period. (*Id.* ¶¶ 12-13.)

Plaintiff claims that she never had a chance to obtain full-time employment. (*Id.* ¶ 13.) From the start of her tenure, plaintiff's supervisor, Trang Jensen, was rude and condescending to her. (*Id.* ¶ 11.) Jensen did not provide training to plaintiff, despite doing so for her white coworker, Nicolas Rotow. (*Id.*) After hearing of Rotow's training, plaintiff requested to receive the same training, but was denied. (*Id.*) Jensen further refused to answer plaintiff's questions, telling her to "research it" instead. (*Id.*) In addition to the hostile work environment, the County paid her hourly rate for only 40 hours per week, despite plaintiff working significant overtime, and failed to reimburse her cellphone-related work expenses. (*Id.* ¶¶ 46, 50.)

At the same time, Rotow made disparaging statements about plaintiff. Plaintiff's former co-worker, Grey Cohen, states that Rotow had advised him not to attempt to learn anything from plaintiff because "it would likely be wrong" and plaintiff would "not be with the office much longer." (*Id.* ¶ 20.) Rotow also told Cohen that he need not be concerned with the pronunciation of plaintiff's name because it "wouldn't make any difference." (*Id.*) Finally, Cohen states that Rotow had disparaged plaintiff to a judge. (*Id.*) While discussing caseload in the judge's chambers, Rotow had indicated to the judge that "she would not have to put up with [plaintiff] much longer." (*Id.*) Several defense attorneys confirmed to Cohen that Rotow had disparaged plaintiff for weeks, which they believed helped engineer plaintiff's termination. (*Id.*) Cohen brought up his concerns regarding Rotow's disparagement to Krones, but Krones dismissed those concerns. (*Id.*) Jensen similarly made no effort to stop Rotow. (*Id.* ¶ 11.)

Plaintiff was terminated and replaced by a caucasian male in April 2019. (*Id.* ¶ 13.) Upon her termination, plaintiff requested the County to provide her personnel records pursuant to California Labor Code 119.8, but the County provided only partial records, without Anderson's job evaluation of plaintiff. (*Id.* ¶ 55.) Plaintiff filed a complaint with the California Department of Fair Employment and Housing and received an immediate right to sue. (*Id.* ¶ 21.)

United States District Court
Northern District of California

Plaintiff now alleges seven causes of action: (1) a claim under 42 U.S.C. § 1983 for violation of the Equal Protection Clause against Jensen, (2) discriminatory termination in violation of Title VII and the California Fair Employment and Housing Act ("FEHA") against the County, (3) failure to prevent discrimination in violation of FEHA against the County, (4) defamation against the County and Rotow, (5) failure to pay minimum wage under California law by the County, (6) failure to reimburse business expenses pursuant to the California Labor Code § 2802 by the County, and (7) failure to timely provide personnel records pursuant to the California Labor Code § 1198.5 by the County.

## II.   SPECIAL MOTION TO STRIKE

### A.   Legal Standard

California enacted its anti-SLAPP statute after noticing "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances." Cal. Civ. Proc. Code § 425.16(a). To encourage "continued participation in matters of public significance" that is not "chilled through abuse of the judicial process," *id.*, the anti-SLAPP statute provides that:

> [a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

*Id.* § 425.16(b)(1).

This Court, sitting in diversity, follows the California courts' two-step process for analyzing an anti-SLAPP motion. *Hilton v. Hallmark Cards,* 599 F.3d 894, 903 (9th Cir. 2010). First, the moving party must make "a threshold showing . . . that the act or acts of which the plaintiff complains were taken 'in furtherance of the right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute." *Equilon Enters., LLC v. Consumer Cause, Inc.,* 29 Cal.4th 53, 67 (2002) (quoting Cal. Code Civ. Proc. § 425.16(b)(1)). The moving party does so by showing that the act underlying the complaint fits one of the categories defined in section 425.16(e). *Navellier v. Sletten,* 29 Cal. 4th

3

United States District Court
Northern District of California

82, 88 (2002) (citing *Braun v. Chronicle Publishing Co.,* 52 Cal.App.4th 1036, 1043 (1997)). Where a cause of action arises from both protected and unprotected activity, "the unprotected activity is disregarded at this stage." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016).

Second, once the moving party makes a prima facie case, the burden shifts to the complainant to show that there is a probability of prevailing on the complaint. *Navellier,* 29 Cal. 4th at 88. To do so, the complainant must state and substantiate a legally sufficient claim. *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002). In other words, the complainant must demonstrate "that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Id.* In evaluating the second step, the court does not weigh the evidence, but considers only "whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment." *Baral*, 1 Cal. 5th at 396; *see also Sweetwater Union High Sch. Dist. v. Gilbane Bldg. Co.*, 6 Cal 5th 931, 940 (2019) (explaining that the court considers defendant's evidence "only to determine if it defeats the plaintiff's claim as a matter of law").

The court strikes a claim only if the cause of action "satisfies *both* prongs of the anti-SLAPP statute—i.e., [it] arises from protected speech or petitioning *and* lacks even minimal merit." *Navellier*, 29 Cal. 4th at 89 (emphases in original). The purpose of the Anti-SLAPP statute is not to immunize protected conduct—only to prevent frivolous claims. *Sweetwater*, 6 Cal. 5th at 940; *Navellier*, 29 Cal. 4th at 93-94 ("[T]he statute poses no obstacle to suits that possess minimal merit."). But if the complainant fails to meet that burden, the allegations of the protected activity and claims based thereon are stricken from the complaint "unless they also support a distinct claim on which plaintiff has shown a probability of prevailing." *Baral*, 1 Cal. 5th at 396. The cause of action as a whole may remain based on unprotected activity. *See id.* The Court analyzes each prong.

**B.     Analysis**

       1.     *First Prong:  Protected Activity*

An act constitutes protected activity under section 425.16 if it is undertaken "in furtherance of [a] person's right of petition or free speech under the United States Constitution or the

4

California Constitution in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1). Section 425.16(e) defines that activity to include:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

*Id.* § 425.16(e)(1)-(4). The first three categories define protected activity solely by its context. *See FilmON.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 144 (2019). For those categories, the Legislature "*equated* a public issue with authorized official proceedings to which it connects." *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1117 (1999) (emphasis in original). The fourth category provides a "catch-all" that protects not only free speech but "all conduct in furtherance" of free speech that is made "in connection" with a public interest issue. *See FilmON.com*, 7 Cal. 5th at 145 (citation omitted).

To evaluate this issue, courts consider "the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." *Park v. Bd. Of Trs. of Cal. State Univ.*, 2 Cal. 5th 1057, 1063 (2017); *Med. Marijuana, Inc. v. ProjectCBD.com*, 64 Cal. App. 5th 869, 883 (2020). Here, Plaintiff bases her defamation claim on four alleged acts: (1) Rotow told Cohen during new employee orientation that plaintiff "would not be with the office much longer" and that he "should not try and learn anything from [plaintiff] because it would likely be wrong," (2) Rotow told Cohen that pronunciation of plaintiff's name "wouldn't make any difference in the future" and Cohen "needn't be concerned with it," (3) Rotow indicated to a judge in chambers that she "would not have to put up with [plaintiff] for much longer" during a misdemeanor calendar in court, and (4) the following week, when Cohen was in court covering the calendar, two defense attorneys indicated to Cohen that Rotow "had been making negative comments about [plaintiff] for weeks and that in their opinion, he helped engineer her termination." (FAC ¶ 20.)

Defendants contend that each of these alleged acts constitute protected conduct under section 425.16(e)(1), (2), and (4).[1]  Each is reviewed.

### a.    Section 425.16(e)(1)

Defendants first argue that Rotow's in-chambers statement to the judge that she would "not have to put up with [plaintiff] much longer" constitutes an "oral statement . . . before a . . . judicial proceeding."  Cal. Civ. Proc. Code § 425.16(e)(1).  California courts have interpreted "judicial" and "official" "proceeding" broadly.  *See, e.g.*, *Guarino v. City. Of Siskiyou*, 21 Cal. App. 5th 1170, 1181 (2018) (finding that an internal workplace harassment investigation constitutes an "official proceeding"); *Kibler v. N. Inyo Cty. Local Hos. Dist.*, 39 Cal. 4th 192, 1999 (2006) (finding hospital's peer review procedure qualifies as "official proceeding").  Statements made during these proceeding have been protected because "[a]ny matter pending before an official proceeding possesses some measure of 'public significance' owing solely to the public nature of the proceeding, and free discussion of such matters furthers effective exercise of petition rights section 425.16 was intended to protect."  *Briggs*, 19 Cal. 4th at 1118.

Plaintiff counters that a statement made before a *judge* does not necessitate it being a statement before a *judicial proceeding*.  In particular, plaintiff argues that Rotow may have made the statement in connection with a private discussion or after official discussions had concluded.  However, plaintiff does not persuade.  First, Section 425.16(e)(1) defines protected conduct solely by its context and does not require defendants to "separately demonstrate the statement concerned an issue of public significance."  *Briggs*, 19 Cal. 4th at 1123.  Even if Rotow's statements were unrelated to any official matter, they are subject to protection because they occurred "before" a judicial proceeding.  *See id.* at 1110.  Second, plaintiff expressly alleges that Rotow made the statement to the judge while in court for the misdemeanor calendar and during discussions of caseload.  (FAC ¶ 20.)  Plaintiff cannot now disavow her allegations to claim that the judicial

---

[1] Plaintiff argues that defendants failed to establish a prima facie case because they rely on plaintiff's allegations and produce no evidence of protected activity.  However, "a motion to strike does not impose an initial burden of production on the moving defendant."  *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 599 (9th Cir. 2010) (citing *Tuchscher Dev. Enters., Inc. v. San Diego Unified Portal Dist.*, 106 Cal. App. 4th 1219, 1238-40 (2003)); *see also Bel Air Internet, LLC v. Morales*, 20 Cal. App. 5th 924, 938 (2018).

United States District Court
Northern District of California

1    proceeding morphed into unofficial discussions once plaintiff's caseload came up.  Accordingly,

2    defendants make a prima facie case that plaintiff's claim based on Rotow's statement to the judge

3    constitutes protected activity.

4                    *b.*    <u>Section 425.16(e)(2)</u>

5           Defendants next argue that each alleged statement was made "in connection with an issue

6    under consideration" by both the District Attorney's office (an executive body) and the courts

7    (judicial proceedings).  Cal. Civ. Proc. Code § 425.16(e)(2).  "A statement is 'in connection with'

8    litigation under section 425.16, subdivision (e)(2) if it relates to the substantive issues in the

9    litigation and is directed to persons having some interest in the litigation."  *Neville v. Chudacoff*,

10   160 Cal. App. 4th 1255, 1266 (2008).  Typically, that requires the statements to be "aimed at

11   achieving the objects of the litigation."  *Anderson v. Geist*, 236 Cal. App. 4th 79, 89 (2015).  Here,

12   Defendants do not identify any specific "issue" under investigation, but broadly claim that

13   Rotow's statements relate to plaintiff's competence to prosecute pending criminal cases.

14          Defendants' argument fails.  Under California law, "[i]t is insufficient to assert that the acts

15   alleged were 'in connection with' an official proceeding."  *McConnell v. Innovative Artists Talent*

16   *& Literary Agency, Inc.*, 175 Cal. App. 4th 169, 177-78 (2009).  Instead, defendants must show

17   that the statements "relate[] to the *substantive issues* in the litigation."  *Neville*, 160 Cal. App. 4th

18   at 1266 (emphasis supplied).  California courts have rejected the theory that "any activity by

19   public employees in connection with a matter under consideration by an executive agency, [such

20   as] the district attorney, is protected" and have required the conduct to relate to the underlying

21   issues.  *See Anderson*, 236 Cal. App. 4th at 88 (rejecting anti-SLAPP protection for unrelated

22   police statements made during execution of a search warrant); *PrediWave Corp. v. Simpson*

23   *Thatcher & Bartlett LLP*, 179 Cal. App. 4th 1204, 1225-28 (2009) (denying anti-SLAPP motion

24   for attorney malpractice claim based on improper litigation conduct); *Paul v. Friedman*, 95 Cal.

25   App. 4th 853 (2002) (denying anti-SLAPP protection for statements derived from arbitration that

26   were irrelevant to any disputed issue).

27          The Court finds *Paul v. Friedman* instructive in this respect.  In *Paul*, an attorney

28   representing former clients in arbitration conducted an intrusive investigation into a defendant

                                                    7

broker, including through official discovery, and then revealed damaging details to the broker's clients.  95 Cal. App. 4th at 858.  The broker sued, and the attorney moved to strike.  *Id.* at 866. The court denied the attorney's motion:  the statements were not made "in" or "before" the arbitrators, and the investigation was not connected to the issues under arbitration.  *Id.* at 865-68. Even though the attorney had tried to inject the issues into arbitration by claiming that the broker's judgment was impaired—and the panel permitted testimony on the topic—the issue was ultimately irrelevant to the issues.  *Id.* at 867-68 & n.27 (calling the investigation "a distraction").

The same result follows here.  Plaintiff's fitness as a lawyer has no direct connection to the guilt or innocence of any criminal defendant.  Even if Rotow had tried to "inject" such topic into some discussion, the issue remains irrelevant to the underlying proceeding.[2]  Moreover, even if the topic was relevant, defendants fail to show that Rotow's statements were made in connection with any *particular* criminal matter.  Plaintiff alleges that Rotow disparaged her competence (1) during "new employee orientation" to Cohen, (2) when Cohen asked how to pronounce plaintiff's name, and (3) in unknown circumstances known to defense attorneys.  (FAC ¶ 20.)  These allegations are insufficient to show that Rotow's statements related to any issue in a criminal proceeding prosecuted by the District Attorney's office or under consideration by the courts.  Accordingly, defendants fail to show protected activity under section 425.16(e)(2).

### c.   Section 425.16(e)(4)

Finally, defendants claim that each alleged statement was made "in furtherance of the constitutional right of petition or . . . free speech" and "in connection with a public issue or an issue of public interest."  Cal. Civ. Proc. Code § 425.16(e)(4).  Courts apply a two-part analysis under this subdivision:  first, the court determines the "public issue" or "issue of public interest" by evaluating the content of the speech; and second, the court analyzes the "functional relationship . . . between the speech and the public conversation about some matter of public interest." *FilmOn.com*, 7 Cal. 5th at 149-50.  The speech must have "some degree of closeness" to the issue of public interest to be protected.  *Id.* at 150.  Specifically, "the statement must in some manner

---

[2] Notably, defendants do not claim that plaintiff was so incompetent as to affect the outcome of any misdemeanor prosecution.

United States District Court
Northern District of California

1   itself contribute to the public debate" on the issue, not merely "refer to a subject of widespread

2   public interest." *Id*. (quoting *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 898 (2004)).

3          Beginning with the first part, a "public issue or issue of public interest" has been found

4   where speech concerns a person or entity "in the public eye," conduct that affects a large number

5   of people, or a topic of widespread public interest. *Rivero v. Am. Fed. Of State, Cty. and Mun.*

6   *Empl., AFL-CIO*, 105 Cal. App. 4th 913, 924 (2003).  On the other hand, statements about

7   "private, anonymous" persons or matters that concern a "small, specific audience" typically do not

8   qualify. *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132 (2003).  Even statements that implicate

9   public policy may not rise to the level of a public issue or issue of public interest if they fall

10  "below some threshold level of significance." *Rivero*, 105 Cal. App. 4th at 924.

11         For example, in *Rivero*, a former janitor supervisor at a public university sued a union that

12  publicly accused him of mistreating staff and soliciting bribes.  105 Cal. App. 4th at 916, 924.

13  The court found that the anti-SLAPP statute did not apply because the statements "concerned the

14  supervision of a staff of eight custodians by . . . an individual who had previously received no

15  public attention or media coverage" and only directly affected those individuals.  *Id*. at 924.  The

16  court further rejected the argument that because the statements concerned employee conduct at a

17  *publicly-financed* university, they assumed public importance.  *Id*. at 925.  Under that argument,

18  "every alleged inappropriate use of public funds," such as "the theft of a single pencil," would

19  constitute a matter of public interest.  *Id*.  Rejecting that interpretation, the court held that the

20  moving party "failed to establish that the actions of a supervisor of eight custodians rose to the

21  level of a public issue."  *Id*.

22         Here, defendants claim that Rotow's statement implicate a public issue, namely the

23  functioning of government. Defendants do not persuade.  Rotow's statement concerned the

24  competence of a single, low-level misdemeanor prosecutor who had worked at the District

25  Attorney's office for less than a year.  Rotow did not opine on rampant incompetence in the

26  District Attorney's office or failure to prosecute some notorious criminal.  The statements appear

27  to be of interest only to the limited audience of plaintiff's coworkers and others who come in

28  professional contact with her.  In these circumstances, defendants fail to show that the issues

1    implicated by Rotow's statements rise to the level of a public issue.

2           Moreover, even assuming, *arguendo*, that defendants correctly identify a public issue

3    under the first step, they fail to show that statements contributed to the debate on that issue under

4    the second step.  Rotow appears to have disparaged plaintiff in essentially private settings to

5    essentially private audiences without any comment on government functioning as a whole.  Rotow

6    did *not* make the statements to anyone who had power to address prosecutorial "incompetence,"

7    but only to a new employee (Cohen) and to defense attorneys who had no power over

8    prosecutorial conduct.  His statements thus failed to contribute to the debate over government

9    functioning even if plaintiff's individual competence implicated that issue.

10          Defendants' remaining arguments also fail.  Defendants rely on out-of-context excerpts

11   from cases to argue that "litigation-related activities" further the constitutional right to petition.

12   Their argument conflates litigation as an *activity* and litigation as a *topic*.  Rotow's statements did

13   not further his own litigation activity because they were unrelated to his caseload.  They also did

14   not further the County's right to petition because Rotow's private disparagement of plaintiff was

15   not designed to affect how she prosecuted the case.  In other words, plaintiff does not allege that

16   Rotow disparaged plaintiff to try to give advice or shape the litigation—he did it to get plaintiff

17   fired.  To the extent that the statements concerned litigation as a topic, defendants fail to show that

18   plaintiff's prosecution of those cases rises to the level of a public issue or that Rotow's statements

19   contributed to the public discussion of that issue, for the reasons stated above.

20          Accordingly, defendants fail to show protected activity under section 425.16(e)(4) and to

21   make a prima facie case that the anti-SLAPP statute applies for all but one allegation.  With

22   respect to that allegation, the Court reviews the second step of the anti-SLAPP analysis.

23                  2.      *Second Prong:  Probability of Success*

24          The second prong of the anti-SLAPP test has been compared to "reverse summary

25   judgment" where plaintiff must demonstrate the existence of a triable claim.  *See Tuchscher Dev.*

26   *Enter.*, 106 Cal. App. 4th at 1237-38; *College Hos. Inc. v. Sup. Ct.*, 8 Cal. 4th 704, 719 (1994).

27   California courts require plaintiffs to produce admissible evidence demonstrating minimum merit

28   under this prong.  *Sweetwater*, 6 Cal. 5th at 940.  However, in *Planned Parenthood Federal of*

United States District Court
Northern District of California

1   *America, Inc. v. Center for Medical Progress*, the Ninth Circuit found that this requirement

2   conflicts with the Federal Rules of Civil Procedure.  890 F.3d 828, 833 (9th Cir. 2018).

3         Accordingly, federal courts in this circuit apply a different standard depending on the

4   nature of defendants' anti-SLAPP challenge.  *Id.* at 834.  "[W]here an anti-SLAPP motion to

5   strike challenges only the legal sufficiency of a claim, a district court should apply the Federal

6   Rule of Civil Procedure 12(b)(6) standard and consider whether the claim is properly stated."  *Id*.

7   But "when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the

8   Federal Rule of Civil Procedure 56 will apply."  *Id*.  Here, defendants' motion challenges both the

9   legal sufficiency and the factual basis of plaintiff's claim.  Because the Court finds that plaintiff

10   fails to state a claim, it analyzes plaintiff's claim under the Rule 12(b)(6) standard without

11   considering the factual challenge.

12         Defamation involves "(a) a publication that is (2) false, (c) defamatory, and (d)

13   unprivileged, and that (e) has a natural tendency to injury or that causes special damage."  *Taus v.*

14   *Loftus*, 40 Cal. 4th 683, 720 (2007).  "The sine qua non of recovery for defamation is the existence

15   of falsehood."  *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 155 (2013).  The

16   critical question for falsehood is "whether a reasonable fact finder could conclude the published

17   statement declares or implies a provably false assertion of fact."  *Id.* (citation omitted).  The

18   totality of the circumstances informs this inquiry.  *Id.*

19         Here, Rotow's statement to a judge that she "would not have to put up with [plaintiff] for

20   much longer" makes a representation of fact—plaintiff would soon leave the District Attorney's

21   office.  However, that representation is neither false nor disparaging.  Considering the totality of

22   the circumstances, the Court cannot determine that Rotow made any defamatory or false statement

23   in this context.  Although Cohen allegedly drew the inference that Rotow had disparaged plaintiff,

24   he admits that Rotow "did not give . . . specifics about the details of the conversation" and

25   provides no factual foundation for his inference.  (FAC ¶ 20.)  Accordingly, plaintiff's defamation

26   claim based on the protected statement to the judge fails to rise above a mere "possibility" of

27   liable conduct and thus fails to state a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

28         Accordingly, the Court **STRIKES** the following statement from the complaint:  "On April

United States District Court
Northern District of California

11

15 we were in court on the misdemeanor calendar and he came out of the judges chambers after some discussion with the judge.  I asked him what took so long, as I was curious about the caseload, he advised me that he was discussing Matters concerning you and your caseload with the judge and he indicated to the judge that she would not have to put up with you for much longer.  While he did not give me specifics about the details of the conversation the inference I drew was that he was disparaging you in Chambers to the Judge."  The remainder of defendants' motion to strike is **DENIED**.

### III.   MOTION TO DISMISS

### C.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted.  Dismissal for failure under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed.  *Id*. at 678-79; *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (stating that a court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

If a court dismisses a complaint, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

### D.   Analysis

Defendants move to dismiss each claim under *Twombly/Iqbal*.  The Court first analyzes plaintiff's discriminatory termination claims and then the remaining claims in turn.

1

1.       *Discriminatory Termination Claims*

Plaintiff alleges that her termination violated 42 U.S.C. § 1983, Title VII, and FEHA.  To state a claim under section 1983 for violation of the Equal Protection Clause, plaintiff must show that "defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class, and that plaintiff was treated differently from persons similarly situated."  *Lam v. City and Cty. Of San Francisco*, 868 F. Supp. 2d 928, 951 (N.D. Cal. 2012), *aff'd* 565 F. App'x 741 (9th Cir. 2014) (citation and internal quotation marks omitted).  Plaintiff may satisfy this standard by alleging: "(1) that the plaintiff was treated differently from others similarly situated; (2) this unequal treatment was based on an impermissible classification; (3) that defendant acted with discriminatory intent in applying this classification; and (4) the plaintiff suffered injury as a result of the discriminatory classification."  *Id.*  In an employment disparate treatment case under section 1983, "a district court is guided by Title VII analysis."  *Id.*

Under Title VII, plaintiff may allege employment discrimination by showing:  "(1) that the plaintiff belongs to a class of persons protected by Title VII; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff."  *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).  California FEHA law, which mirrors Title VII claims, applies the same framework.  *Lam*, 868 F. Supp. 2d at 952.

Here, defendants do not dispute that plaintiff belongs to a protected class (African-American) and that she suffered an adverse employment action (termination).  However, defendants challenge that this treatment was *discriminatory* compared to employees outside of plaintiff's protected class or that defendants acted with the requisite intent.  The Court finds plaintiff's allegations sufficient.  Plaintiff adequately alleges disparate treatment based on her white co-worker receiving training, while she did not. (Compl. ¶ 11.)  Plaintiff also alleges that she was terminated despite performing her job competently, while her similarly situated white coworker continues to be employed. (*Id.*  ¶¶ 7, 24.)  Discriminatory intent may be inferred from these circumstances even if plaintiff fails to allege any direct evidence of racial animus.  *See*

13

1   *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1107 (9th Cir. 2008) (finding plaintiff met prima

2   facie case for discrimination by alleging that defendants "refused to train her for the position" but

3   trained "a younger, white woman with less seniority"); *see also Vasquez v. Cty. Of L.A.*, 349 F.3d

4   634, 640-41 (9th Cir. 2003) (considering *McDonnell Douglas* framework as an alternative to

5   direct or circumstantial evidence of discrimination).

6           Defendants argue, in main part, that plaintiff was terminated for incompetence and that

7   plaintiff cannot show this reason was pretextual.  However, defendants put the cart before the

8   horse.  Plaintiff adequately alleges that she was competent by alleging statements from former

9   coworkers and the District Attorney attesting to her professionalism and legal skills.  (FAC ¶¶ 15-

10  20.)  Since she alleges a prima facie case under *McDonnell Douglas*, defendants have the burden

11  to produce admissible evidence of a show a non-discriminatory reason for termination.  *See St.*

12  *Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07 (1993).  Only *after* defendants show a non-

13  discriminatory reason does plaintiff have to establish that the reason is pretextual.  *See id.*; *Hawn*

14  *v. Executive Jet Management, Inc.*, 615 F.3d 1151, 1158 (9th Cir. 2010) (explaining that the first

15  and third step of the analysis involve different burdens and analysis).  The determination of pretext

16  at a motion to dismiss stage is therefore premature.

17          Accordingly, the Court does not dismiss the discriminatory termination claims.[3]

18          **E.      Failure to Prevent Discrimination**

19          Section 12940(k) of the California Government Code makes it unlawful "for an employer .

20  . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from

21  occurring" in a workplace.  To state a claim under the statute, plaintiff must allege that (1) "[she]

22  was subjected to discrimination, harassment or retaliation," (2) "defendant failed to take all

23  reasonable steps to prevent discrimination, harassment or retaliation," and (3) "this failure caused

24  plaintiff to suffer injury, damage, loss or harm."  *Alejandro v. ST Micro Elecs., Inc.*, 178 F. Supp.

25

26          [3] Defendants argue in passing that plaintiff failed to exhaust her remedied because she did
27  not obtain a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC).
    However, plaintiff alleges that she timely obtained a right to sue from the California Department
28  of Fair Employment and Housing, which satisfies this requirement.  *See Surrell*, 518 F.3d at 1105.
    Defendants' related time-bar argument is waived as raised for the first time in the reply brief.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   3d 850, 864 (N.D. Cal. 2016) (citation omitted).  Defendants challenge the first and second

2   elements:  discrimination and failure to take reasonable steps.

3   For the reasons stated in the previous section, the Court finds that plaintiff adequately

4   alleges that she was subjected to discrimination.  The Court also finds that plaintiff adequately

5   alleges that defendants failed to prevent discrimination:  the complaint states that Cohen talked to

6   District Attorney Krones about plaintiff's treatment and specifically warned against terminating

7   the only person of color in the office, but that Krones did so anyway.  (FAC ¶ 20.)  Accordingly,

8   the Court does not dismiss plaintiff's section 12940(k) claim.

9   ### F.     Defamation

10  Defendants move to dismiss plaintiff's defamation claim on the grounds that (1) the

11  allegations are too vague, (2) the alleged statements are non-actionable opinion, (3) the statements

12  are protected by the judicial proceeding (litigation) privilege, (4) the statements are protected by

13  the common interest privilege, and (5) the statements are protected by California Government

14  Code § 821.6.  Only the first two grounds challenge plaintiff's pleading—the remaining three

15  grounds are affirmative defenses that defendants must establish as a matter of law.  The Court

16  considers each.

17  ### 1.     *Sufficiency of the Pleading*

18  To state a defamation claim, the defamatory statements must be "specifically identified"

19  and "the substance of the defamatory statement must be alleged."  *Silicon Knights, Inc. v. Crystal*

20  *Dynamics, Inc.*, 983 F. Supp. 1303, 1313 (N.D. Cal. 1997).  Under this standard, courts have

21  dismissed claims that do not specify "to whom the statements or when they were made, does not

22  identify the person who is alleged to have said which words, and alleges only that someone made

23  vague comments" about an unfavorable topic.  *Charlson v. DHR Int'l Inc.*, No. C 14-3041 PJH,

24  2014 WL 4808851, at *5 (N.D. Cal. Sept. 26, 2014); *see, e.g.*, *Hardin v. Mendocino Coast Dist.*

25  *Hos.*, No. 17-cv-05554-JST, 2018 WL 6331009, at *4 (N.D. Cal. Dec. 4, 2018) (dismissing claim

26  based on general allegations of statements that plaintiff "engaged in wrong doing, violated

27  policies, and rules, that Plaintiff's performance was deficient, and indicating that Plaintiff would

28  no longer be employed"); *Gressett v. Contra Costa Cty.*, No. C-12-3798 EMC, 2013 WL

2156278, at *30 (N.D. Cal. May 17, 2013) (dismissing defamation claim where plaintiff did not connect statements to specific persons or time); *Titan Global LLC v. Organo Gold Int'l, Inc.*, No. 12-CV-2104-LHK, 2012 WL 6019285, at **10-11 (N.D. Cal. Dec. 2, 2012) (dismissing statements based on general allegations that defendants attacked plaintiff's "quality . . . reliability . . . competence . . . and cooperation").

Here, plaintiff alleges that Rotow told Cohen on March 25, 2019 not to attempt to learn anything from plaintiff because "it would likely be wrong." (FAC ¶ 20.) Plaintiff also alleges that defense attorneys Edward Savin and Scott Emerick told Cohen on April 23, 2019, that Rotow had been disparaging plaintiff for weeks and had helped engineer her termination. (*Id.*) Although the latter allegation does not plead specific substance (plaintiff elsewhere alleges Rotow disparaged her competence), the Court finds these allegations sufficient. The purpose of notice pleading is to give defendants sufficient notice to build a defense. Here, plaintiff provides a clear factual basis that makes her claim "plausible" and allows defendants to build a defense—as, indeed, they do in the rest of their motion. Nothing more is required.

Accordingly, the Court does not dismiss the defamation claim on this ground.

### 2.  *Statement of Opinion*

Defendants next challenge the alleged statements as inactionable opinion. "[S]tatements that cannot reasonably be interpreted as stating actual facts[] are protected by the First Amendment and, as a result, cannot be a basis of a state-law defamation claim." *Weiner v. San Diego Cty.*, 210 F.3d 1025, 1031 (9th Cir. 2000). Under this standard, "rhetorical hyperbole, vigorous epithets, lusty and imaginative expressions of contempt, and language used in a loose, figurative sense have all been accorded protection." *Nygard, Inc. v. Usi-Kerttula*, 159 Cal. App. 4th 1027, 1048 (2008). The court considers the totality of the circumstances to distinguish facts from opinion. *Weiner*, 210 F.3d at 1031.

Here, defendants claim that Rotow's statements constitute opinion because he made them to coworkers and used hyperbolic language. Defendants' argument fails. The suggestion that Cohen not try to learn anything from plaintiff because "it would likely be wrong" implies specific facts—plaintiff's lack of fitness for her job. Statements that "[t]ends directly to injure [a person]

16

in respect to his office, profession, trade or business," including by "imputing to him general disqualifications in those respects which the office or other occupation peculiarly requires," are defamatory per se. *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 113 (2007) (quoting Cal. Civ. Code § 46(3)). Accordingly, plaintiff adequately pleads defamatory statements of fact.

### 3. *Judicial Proceeding Privilege*

Defendants next assert the judicial proceeding (litigation) privilege. Under California Civil Code § 47(b), the litigation privilege protects statements (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006).

Defendants argument fails for the reasons stated in Section II.B, *supra*. *See Neville*, 160 Cal. App. 4th at 1263 (noting that anti-SLAPP statute and litigation privilege serve similar policy interests and may be used as an aid to the other). While Rotow's statement to a judge was "before" a judicial proceeding," his remaining statements were made during "new employee orientation" and other circumstances unrelated to Rotow's prosecution activities. Defendants fail to show that any of the latter statements had any connection to an issue disputed in litigation or that Rotow aimed to achieve any object of that litigation. Indeed, the Court fails to see how disparaging a fellow prosecutor could possibly advance the interests of prosecution in any case. Accordingly, defendants have not established this affirmative defense as a matter of law, and the Court does not dismiss on this ground.

### 4. *Common Interest Privilege*

Defendants assert the common interest privilege under California Code of Civil Procedure § 47(c). The common interest privilege protects communications "to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent." Cal. Code Civ. P. § 47(c). However, statements made with "actual malice" are exempt from the privilege. *Id.* Actual malice may be alleged by showing either (1) "that the publication was motivated by hatred or ill will towards the plaintiff," or (2) "that the defendant lacked reasonable

17

1

2

grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Taus*, 40 Cal. 4th at 721.

3

4

5

6

7

8

9

10

11

12

13

Here, plaintiff adequately alleges that Rotow made the disparaging statements without reasonable grounds for belief in the truth of the statements.  In particular, plaintiff alleges that multiple coworkers and the former District Attorney attested to her professionalism, legal research ability, and skills as a lawyer.  Accordingly, the allegations are sufficient to withstand a motion to dismiss.  *See Umamoto v. Insphere Ins. Solutions, Inc.*, No. 13-CV-0475-LHK, 2013 U.S. Dist. LEXIS 68622, at *18 (N.D. Cal. May 13, 2013) (finding actual malice alleged where plaintiff pled that she was "consistently ranked #1 nationally" and received accolades for sales contrary to defendants' disparaging statements); *MacKinnon v. Logitech Inc.*, 15-cv-05231-THE, 2016 U.S. Dist. LEXIS 65677, at **12-13 (N.D. Cal. May 18, 2016) (denying motion to dismiss where plaintiff alleged she had high sales numbers and received congratulatory emails while defendants disparaged her work performance).

14

15

Defendants have not established this affirmative defense as a matter of law and the Court does not dismiss on this ground.

16

### 5.   *Prosecutorial Immunity*

17

18

19

20

21

22

23

24

25

Defendants last assert prosecutorial immunity under California Government Code § 821.6.  Prosecutorial immunity applies to public employees for injuries "caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probably cause."  Cal. Gov. Code § 821.6.  The privilege does not apply to "acts that are not done in furtherance of an investigation/the prosecution process."  *Hill v. Clovis Police Dep't*, No. 1:11-cv-1391 AWI SMS, 2011 WL 5828224, at *6 (E.D. Cal. Nov. 18, 2011).  Moreover, the Ninth Circuit, applying the law of California's highest court, has rejected section 821.6 immunity outside of malicious prosecution claims.  *See Sharp v. Cty. of Orange*, 871 F.3d 901, 921 (9th Cir. 2017).

26

27

28

Defendants' argument therefore fails.  First, plaintiff does not state a malicious prosecution claim.  Second, defendants fail to show that Rotow's statements were made in furtherance of any investigation or prosecution.  Viewing all facts in favor of plaintiff, Rotow's statements were

United States District Court
Northern District of California

18

made during "new employee orientation" and in other contexts outside of any litigation.  *See*

*supra* Section. II.B.  The Court therefore does not dismiss on this ground.

### G.    Minimum Wage Claim

Defendants next move to dismiss plaintiff's minimum wage claim on the ground that she is

an exempt professional employee.[4]  California law requires employers to pay mandatory overtime

unless exempted by the Industrial Welfare Commission (IWC).  Cal. Lab. Code §§ 510(a), 515(a);

*Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820, 824 (9th Cir. 2011).  The IWC wage

order provides a "professional exemption" for employees who work in professions and meet

specified criteria.  Cal. Code Regs. tit. 8, §11040(1)(A)(3).  That exemption applies to employees

who are (1) licensed and primarily engaged in the practice of law, (2) "customarily and regularly

exercise[] discretion and independent judgment in the performance of duties," and (3) earn a

monthly salary equivalent to no less than two times the state minimum wage for full-time

employment.  *Id.*

Plaintiff does not dispute that she satisfies the first two criteria, but argues that she was not

paid a monthly "salary" because she was paid an hourly rate.  A "salary" is "generally understood

to be a fixed rate of pay as distinguished from an hourly wage."  *Negri v. Koning & Assoc.*, 216

Cal. App. 4th 392, 397 (2013).  California courts follow the federal "salary basis" test to analyze

this requirement.  *See id.* at 398 (noting that the California Labor Commission has adopted the

federal test in opinion letters); *Kettenring v. L.A. Unified Sch. Dist.*, 167 Cal. App. 4th 507, 513

(2008).  Under the "salary basis" test, an employee is "considered to be paid on a 'salary basis' . . .

if the employee regularly receives . . . a predetermined amount constituting all or part of the

employee's compensation, which amount is not subject to reduction because of variations in the

quality or quantity of the work performed."  29 C.F.R. § 541.602(a).

In *Negri*, the court found that an employee paid on an hourly basis did not meet the salary

---

[4] Defendants seek judicial notice of the wage order and plaintiff's collective bargaining agreement ("CBA").  The wage order is subject to judicial notice.  *Vasserman v. Henry Mayo Newhall Memorial Hos.*, 65 F. Supp. 3d 932, 944 (C.D. Cal. 2014) (collecting cases).  However, defendants seek to introduce the CBA solely to show that it calls plaintiff an exempt employee. Because this fact is disputed, judicial notice is inappropriate.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir 2018).

United States District Court
Northern District of California

basis test because his pay theoretically varied according to the numbers of hours worked. 216 Cal. App. 4th at 399-400. Although, as a practical matter, the employee always worked 60 hours per week, the pay nevertheless varied "according to the amount of time he put in" and was therefore not "predetermined." *Id.* at 399. In so holding, the *Negri* court distinguished *Kettenring*, which found that teachers paid on an hourly basis were salaried because of a stipulation that the pay was not subject to reduction based on quantity of time worked. *Id.* (citing *Kettenring*, 167 Cal. App. 4th at 514). Absent such concessions, an hourly rate implied that compensation was "subject to reduction because of variations in the . . . quantity of the work performed." *Id.*; *see also Conley v. Pacific Gas & Elec. Co.*, 131 Cal. App. 4th 260, 267 (2005) (analyzing "salary basis" test by examining the effect of partial day absences on pay).

Here, plaintiff alleges that she was paid $27.89 per hour "for a maximum of 40 hours a week." (FAC ¶ 46.) Drawing all inferences in favor of plaintiff, her pay was subject to reduction based on quantity of work performed because she would have been paid less if she worked less than 40 hours per week. Even if plaintiff in practice worked more than 40 hours, she nevertheless remains a non-salaried worker under *Negri* if her pay was subject to the deduction. Accordingly, defendants fail to establish that the professional exemption applies. *See Campbell*, 642 F.3d at 825 ("[O]vertime exemption is an affirmative defense that must be pled and proven by the employer.").

Defendants also argue that plaintiff pleads insufficient facts because she would have to work more than 80 hours per week to be paid less than the minimum wage. However, defendant's argument appears to rely on the federal law model of averaging the pay for all hours worked to determine a minimum wage violation, which does not apply under California law. *See Ridgeway v. Walmart Inc.*, 946 F.3d 1066, 1084 (9th Cir. 2020) (citing *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 323 (2005)). Accordingly, the Court does not dismiss the minimum wage claim.

### H.    Expense Reimbursement Claim

Defendants move to dismiss the expense reimbursement claim. California Labor Code § 2802(a) requires an employer to indemnify its employee's "necessary expenditures" incurred "in direct consequence of the discharge of his or duties." The provision does not apply to "general

law counties" that constitutionally set their own laws for employee compensation.  *See Wellpoint Health Networks v. Sup. Ct.*, 59 Cal. App. 4th 110, 124 (1997).

Here, Defendants provide no evidence that the County of Lake is a general law county.  Instead, defendants boldly assert that such conclusion is "clear" "without requiring it to submit evidence."  Defendants are wrong—the Court has no basis to conclude that the County of Lake is a general law county.  Absent a factual basis to dismiss on this ground, the Court does not do so.  Defendants also claim, with little additional detail, that plaintiff used her cell phone for her own expediency while other prosecutors did not do so.  The Court finds that plaintiff adequately alleges that cell phone use constituted "necessary expenditures" because she had to contact witnesses, policy officers, and supervisors outside of working hours.  (FAC ¶ 51.)  Accordingly, the Court does not dismiss plaintiff's expense reimbursement claim.

### I.        Personnel File Claim

Defendants last move to dismiss plaintiff's personnel file claim.  Plaintiff bases her claim under California Labor Code § 1198.5 on defendants' failure to provide Andersen's positive job evaluation for plaintiff.  Defendants contend that no such job evaluation exists.[5]  That is a dispute of fact not properly resolved on a motion to dismiss.  Drawing all inferences in favor of plaintiff, the report exists because Anderson told plaintiff that it does.  (FAC ¶ 55.)

Defendants also cite California Labor Code § 1198.5(n) to argue that plaintiff's right to inspect or copy her personnel records "ceases during the pendency of the lawsuit" that "relates to a personnel matter."  However, the statute expressly states that a former employer may "bring an action for injunctive relief to obtain compliance with this subsection."  Cal. Lab. Code § 1198.5(l).  Defendants do not defend their argument in reply and appear to concede that plaintiff may sue for compliance even if she cannot enforce it "during" the lawsuit.  Accordingly, the Court does not dismiss on this ground.

---

[5] Defendants again seek judicial notice of Lake County Personnel Rules to supply this disputed fact.  Such use of judicial notice is inappropriate.  The doctrine cannot be used to defeat the well-pled allegations of a complaint.  *See Khoja*, 899 F.3d at 999.

United States District Court
Northern District of California

**IV.   CONCLUSION**

For the foregoing reasons, the Court **DENIES** defendants' motion to dismiss.  The Court hereby **STRIKES** the following allegation from the complaint and **DENIES** the remainder of defendants' motion to strike:  "On April 15 we were in court on the misdemeanor calendar and he came out of the judges chambers after some discussion with the judge.  I asked him what took so long, as I was curious about the caseload, he advised me that he was discussing Matters concerning you and your caseload with the judge and he indicated to the judge that she would not have to put up with you for much longer.  While he did not give me specifics about the details of the conversation the inference I drew was that he was disparaging you in Chambers to the Judge."

This Order terminates Docket Numbers 16 and 18.


**IT IS SO ORDERED.**


Dated: July 6, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**